IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEANETTE TERRELL,

            Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security

            Defendant.

No. 05-6276-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Jeanette Terrell brings this action for judicial review of a final decision of the

Commissioner of Social Security denying her application for supplemental security income

payments under Title XVI of the Social Security Act.  The court has jurisdiction under 42 U.S.C.

§ 405(g).  The Commissioner's decision is AFFIRMED.

## BACKGROUND

      Ms. Terrell was born September 19, 1942.  Tr. at 95.[1]  She did not graduate from high

school but earned a general equivalency degree ("GED").  Tr. at 38.  Prior to filing for disability,

---

      [1] "Tr." refers to the official transcript of record submitted by the Commissioner on
January 26, 2006.

PAGE 1 - OPINION AND ORDER

Ms. Terrell worked as a home health care attendant or care giver. Tr. at 61, 107. In her initial application, Ms. Terrell alleged disability since October 11, 1998, due to fibromyalgia and speech problems. Tr. at 106, 297.

On July 23, 1999, Ms. Terrell filed an application for supplemental security income ("SSI"). Tr. at 95-98. This application was denied initially and on reconsideration. Tr. at 77-90. On May 25, 2001, after a hearing, an administrative law judge (ALJ) found Ms. Terrell not disabled. Tr. at 11-17. The Appeals Council denied Ms. Terrell's request for review of the hearing decision. Tr. at 4-7.

Ms. Terrell appealed, and, on July 2, 2002, the district court granted the Commissioner's motion to remand for further consideration of the medical evidence, the development of a possible mental impairment, and a reassessment of Ms. Terrell's credibility. Tr. at 362-74. At the hearing on remand, Ms. Terrell's attorney requested that the initially alleged onset date of disability be amended to a closed period of disability of July 23, 1999 through September 19, 2002. Tr. at 268. Ms. Terrell's attorney stated that Ms. Terrell was ineligible for benefits after September 19, 2002. *Id.* In accepting the request, the ALJ concluded the evidence of record lacked any indication that Ms. Terrell had a disabling medical impairment prior to July 23, 1999. *Id.*

On June 24, 2005, the ALJ issued an unfavorable decision, finding Ms. Terrell could perform her past relevant work as a care giver for the period under review. Tr. at 278. In reaching her decision, the ALJ rejected the testimony of a physician, a psychologist, a physician's assistant ("P.A."), and discredited Ms. Terrell's testimony. Tr. at 271-75, 278. This appeal followed.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate she is "unable to engage in any substantial gainful activity by reason of any medically determinable

PAGE 2 - OPINION AND ORDER

physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has established a five-step sequential process for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

At step two, the Commissioner must determine whether the claimant has any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. The claimant will be found not disabled if the ALJ determines that she has no severe impairment. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant has severe impairments, the ALJ must proceed to step three.

At step three, the Commissioner must determine whether the claimant has impairments that meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(a)(4)(iii), (d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments). If the ALJ determines the claimant's impairments meet or equal a Listing, the Commissioner will find the claimant disabled without completing the remaining steps in the sequence.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 416.920(e), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (1996).

PAGE 3 - OPINION AND ORDER

At step four, the claimant is not disabled if the Commissioner determines she retains the RFC to perform her past relevant work experience. 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 416.920(a)(4)(v), (g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 146 n.5; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 420.920(g)(1).

## THE ALJ's FINDINGS

At step one, the ALJ found Ms. Terrell had not engaged in substantial gainful activity at any time since the alleged onset date of disability. Tr. at 278. At step two, the ALJ found Ms. Terrell's carpal tunnel syndrome status post release, dementia with speech difficulties, age consistent arthritis, and obesity are "severe" under 20 C.F.R. § 416.920(c). *Id.*

At step three, the ALJ found that Ms. Terrell's medically determined impairments, severe and nonsevere, did not meet or medically equal any of the impairment Listings. *Id.* The ALJ determined Ms. Terrell had the RFC to perform a wide range of medium exertional level work during the period under review. *Id.* At step four, the ALJ concluded Ms. Terrell was able to perform her past relevant work as a care giver. *Id.* Consequently, the ALJ made no findings at step five and concluded Ms. Terrell was not disabled under the Act for the period under review, July 23, 1999 through September 19, 2002. Tr. at 278.

As part of her findings, the ALJ discredited the medical testimony of Dr. Sepulvado, a rheumatologist, the opinion of Dr. Pearson, a psychologist, as well as the observations of Richard Cooksley, a P.A.

The ALJ also found Ms. Terrell's testimony "not totally credible." Tr. at 278. Ms. Terrell's testimony was only accepted to the extent that it was consistent with her RFC. Tr. at 277.

PAGE 4 - OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in medical evidence, and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

**DISCUSSION**

Ms. Terrell contends the ALJ inaccurately assessed her RFC because the ALJ improperly rejected the opinions of an examining rheumatologist, an examining psychologist, as well as the observations of the physician's assistant, and improperly discredited Ms. Terrell's testimony.

I.      **Medical Evidence**

Ms. Terrell argues the ALJ improperly rejected the opinions of Polly Sepulvado, M.D., Edwin E. Pearson, Ph.D., and the observations of Richard Cooksley, P.A. Dr. Sepulvado performed two consultative examinations on Ms. Terrell, one on January 27, 1995, and one on January 26, 1999. Tr. at 243, 270. Dr. Pearson conducted a consultative psychiatric examination of Ms. Terrell ordered by the agency on remand. Tr. at 458. Richard Cooksley, P.A., was periodically Ms. Terrell's primary care giver beginning in June 1998. Tr. at 198.

1.      **Dr. Sepulvado**

Ms. Terrell contends the ALJ erred in rejecting the opinion of the examining rheumatologist, Dr. Sepulvado, that she suffers from fybromyalgia. Pl.'s Mem. in Supp. at 15.

PAGE 5 - OPINION AND ORDER

Ms. Terrell further asserts Dr. Sepulvado's opinion should have been given more weight because she was an examining source specializing in internal medicine with a special interest in rheumatology. *Id.* at 16.

An ALJ is responsible for resolving conflicts in the medical history and ambiguities. *Andrews*, 53 F.3d at 1039. While an examining specialist is generally given more weight about medical issues related to his or her area, 20 C.F.R. § 416.927(d)(5), an ALJ may reject this source in favor of another examining source, or even in favor of a non-treating, non-examining source, when the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

Here, the opinion of Dr. Sepulvado contradicted the opinions of Dr. Foutz, an examining source, and Dr. Williams, a non-treating, non-examining medical expert. Tr. at 271. Like Dr. Sepulvado, Dr. Williams also specializes in internal medicine. Tr. at 166, 497. In resolving the conflicts in the medical history, the ALJ noted that both Dr. Foutz and Dr. Williams found that the allegations for fibromyalgia were unsupported, and that Dr. Sepulvado's opinion provided only an impression of fibromyalgia. Tr. at 271.

The ALJ indicated Dr. Sepulvado's exam omitted any validity testing and was far less detailed than Dr. Foutz' exam. Tr. at 271. The ALJ stated Dr. Sepulvado's exam makes no mention of any limitation or disability but does explain that Ms. Terrell's job as a care giver did not end due to any limitation or disability. Tr. 167, 271.

The ALJ also discusses Dr. Williams' testimony. Tr. at 271. Dr. Williams indicated that the medical record did not support a finding of fibromyalgia. Tr. at 271, 490-508. Dr. Williams classified Ms. Terrell's muscular pain symptoms as complaints of intermittent fibromuscular soreness to be distinguished from fibromyalgia. *Id.* In response to questioning by Ms. Terrell's attorney, Dr. Williams indicated Ms. Terrell's fibromuscular soreness was a symptom of muscle pain and not a disorder or impairment. *Id.*

PAGE 6 - OPINION AND ORDER

Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Sepulvado's opinion. *See Lester*, 81 F.3d at 831.

Ms. Terrell also argues the ALJ was required to recontact Dr. Sepulvado if the ALJ believed Dr. Sepulvado's report to be inadequate. Pl.'s Mem. in Supp. at 16. An ALJ does not have a duty to recontact a doctor unless the doctor's report is ambiguous or insufficient to make a disability determination. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); 20 C.F.R. § 416.912(e). Here, nothing in the record suggests the ALJ found Dr. Sepulvado's reports to be inadequate to make a disability determination. Tr. at 270, 271. The ALJ was therefore under no duty to recontact Dr. Sepulvado.

## 2.    **Dr. Pearsons**

Ms. Terrell contends the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Pearson, the examining psychologist. (Pl.'s Mem. in Supp. at 12.) On remand, the agency ordered an evaluation by Dr. Pearson, and on December 21, 2004, Dr. Pearson examined Ms. Terrell. Tr. at 273, 458. Dr. Pearson diagnosed Ms. Terrell with dementia and concluded the combination of Ms. Terrell's cognitive and medical problems render her unable to work. Tr. at 463. As previously mentioned, the ALJ did find Ms. Terrell suffered from dementia with speech difficulties, but the ALJ rejected Dr. Pearson's opinion that Ms. Terrell was unable to work. Tr. at 274-78. To reject the uncontradicted opinion of an examining source, an ALJ must provide clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

In the present case, the ALJ provided a number of clear and convincing reasons supported by substantial evidence in the record for not accepting Dr. Pearson's opinion that Ms. Terrell is unemployable. First, the ALJ found Dr. Pearson 's conclusion that Ms. Terrell is disabled or unable to work is outside the medical realm. *See* 20 C.F.R. § 416.927(e)(1), (3). This determination is reserved for the Commissioner. *Id.*

PAGE 7 - OPINION AND ORDER

Second, the ALJ clarified that Dr. Pearson's conclusions must be discounted because they overstate the degree of Ms. Terrell's limitations and are not supported by his report or the record as a whole. Tr. at 274. For example, the record does not support Dr. Pearson's assertions that Ms. Terrell is limited in her ability to appropriately respond to work pressures and to interact appropriately with the general public. The ALJ noted Ms. Terrell has never complained of such problems and these problems did not arise in her past job as a care giver. *Id.* Additionally, the ALJ found Dr. Pearson improperly relied on Ms. Terrell's alleged physical impairments, which had not yet been established and which were outside Dr. Pearson's area of competency. *Id.*

Third, the ALJ found Dr. Pearson's conclusion that Ms. Terrell is unemployable to be inconsistent with his objective findings. *Id.* An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported. *Bayliss*, 427 F.3d at 1217. Dr. Pearson reports Ms. Terrell had some difficulty with speech but that she did not become frustrated by any speech interruptions. Tr. at 458-63. Dr. Pearson's report also does not support a basis for this limitation. He stated Ms. Terrell showed difficulties with attention, concentration, and memory. Tr. at 458-63. However, these difficulties were considered only mild impairments or limitations. *Id.*

Finally, the ALJ found the Dr. Pearson's opinion reflected Ms. Terrell's capacity at the end of 2004 rather than her capacity during the period under review. Tr. at 274. In sum, the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Dr. Pearson's opinion that Ms. Terrell is disabled or unable to work.

### 3. Richard Cooksley, P.A.

Ms. Terrell asserts the ALJ improperly rejected the observations of Richard Cooksley, a physician's assistant. Pl.'s Mem. in Supp. at 17. On March 16, 2001, Mr. Cooksley opined Ms. Terrell suffered from fibromyalgia, insomnia, depression, carpal tunnel syndrome, and diabetes. Tr. at 17. However, under the Social Security Act, Mr. Cooksley is not an acceptable medical source who may be used to establish such disabilities or impairments. *See* 20 C.F.R. §

PAGE 8 - OPINION AND ORDER

416.913(a).

Relying on *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), Ms. Terrell argues Mr. Cooksley's opinion should be properly considered part of the acceptable medical evidence because he worked under the close supervision of two doctors.  (Pl.'s Mem. in Supp. at 17.)  In *Gomez*, the Ninth Circuit held a nurse practitioner, or "other sources," working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner, or "other sources," working independently does not.  *Gomez*, 74 F.3d at 971.

Like a nurse practitioner, a P.A., is classified as an "other source."  *See* 20 C.F.R. § 416.913(d)(1).  In developing the record to determine whether Mr. Cooksley worked under the close supervision of either doctor, the ALJ found the record doe not demonstrate that Mr. Cooksley was under the close supervision of either doctor alleged by Ms. Terrell.  Tr. at 272.  To support of this finding, the ALJ discussed Ms. Terrell's recent testimony.  At the April 12, 2005 hearing, Ms. Terrell was questioned by her attorney regarding the involvement of the two doctors in her care.  Tr. at 489.  Ms. Terrell testified only that she had seen Mr. Cooksley speak with the two doctors.  *Id.*  The ALJ therefore properly concluded the record did not show either doctor closely followed Ms. Terrell's course of treatment or was ever present during examinations.

Alternatively, Ms. Terrell argues even if Mr. Cooksley's opinion is not considered part of the acceptable medical evidence, his observations should be given the same weight as a lay witness.  Pl.'s Mem. in Supp. at 17.  In her decision, the ALJ gave Mr. Cooksley lay witness status and gave little weight to his observations.  Tr. at 273.  An ALJ may reject lay witness testimony but must give reasons germane to each witness whose testimony he rejects.  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  Here, the ALJ found Mr. Cooksley's medical conclusions were contradicted by three different medical sources.  Tr. at 273.  The ALJ indicated Mr. Cooksley provided no objective basis for his assessments of Ms. Terrell's limitations  *Id.* The ALJ further found Mr. Cooksley relied on impairments not supported by the medical evidence of record..  Tr. at 272, 273.  As such, the ALJ provided sufficient and germane reasons

germane for rejecting Mr. Cooksley's testimony and observations.

**II.    Credibility Determination**

Ms. Terrell also argues the ALJ failed to provide clear and convincing reasons for rejecting her testimony.  Absent evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons for doing so.  *Smolen*, 80 F.3d at 1283; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment.  *Smolen*, 80 F.3d at 1284.  The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations.  *Id*.  In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid.  *Id*.; *see also* SSR 96-7p, 1996 WL 374186 (1996).

In this case, the ALJ did not outright reject Ms. Terrell's testimony; instead, the ALJ found her allegations regarding her limitations not "totally credible."  Tr. at 278.  The ALJ accepted Ms. Terrell's testimony as descriptive of her perception and found her testimony credible to the extent it was consistent with Ms. Terrell's RFC to perform a wide range of medium exertional level work, including her past work as a care giver.  Tr. at 277.  The ALJ provided clear and convincing reasons to support this finding.

The ALJ considered the opinions of examining physicians who found that Ms. Terrell's allegations of her medical conditions were inconsistent.  For example, the ALJ relied on Dr. Foutz' opinion that Ms. Terrell's pain responses at actual trigger point sites during her exam for fibromyalgia showed different patterns upon retesting; something that would not occur if Ms. Terrell was completely honest about her symptoms.  Tr. at 167, 276.  The ALJ relied on another medical expert, Dr. Patterson, who, on August 22, 2002, a month before the period of disability

closed, found that Ms. Terrell's muscle strength in her arms and in her legs appeared normal, and that she had normal tone and bulk. Tr. at 422-25.

The ALJ also cited Dr. Williams, who found no weakness of muscular functions and no asymmetry. Tr. at 277. Dr. Williams also did not see a decline in Ms. Terrell's capacity since she worked as a care giver in 1998 and found nothing in the medical record to support her allegation that she could not lift more than 10 pounds. *Id.* Along those lines, the ALJ found the medical records indicated Ms. Terrell's upper arm symptoms were substantially resolved following her carpal tunnel releases. Tr. at 277.

The ALJ also relied on Ms. Terrell's reported daily activities to conclude that her limitations were not as severe as she described in her testimony. The ALJ found although Ms. Terrell received help for heavier chores on a limited basis, she engaged in a wide variety of daily activities, including household chores, laundry, cooking, gardening, grocery shopping, and caring for chickens. Tr. 276, 277, 318-337, 484-493. While these activities do not indicate Ms. Terrell's capacity to perform all jobs, the ALJ noted that such activities were consistent with her previous work experience as a care giver, where her duties involved preparing meals, washing dishes, sweeping, and turning her patient over in bed. Tr. at 275, 278. The ALJ also noted Ms. Terrell had complained of limitations prior to her work as a care giver and did not quit that job due to disability; her employment ended because her patient died. Tr. at 275.

The ALJ further considered Ms. Terrell's testimony from her April 19, 2001 and her April 12, 2005 hearings. Tr. at 275-77. Regarding the April 12, 2005 hearing, the ALJ found that much of Ms. Terrell's testimony pertained to her current condition rather than her condition during the period under review, July 23, 1999 through September 19, 2002. Tr. at 276. The transcript of that hearing supports the ALJ's finding. Tr. at 484-93. An ALJ may decline to rely on a claimant's testimony relating to conditions outside the period of eligibility. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)).

PAGE 11 - OPINION AND ORDER

Based on the foregoing, the ALJ provided clear and convincing reasons supported by substantial evidence in the record for discrediting Ms. Terrell's testimony regarding the severity of her symptoms. *Smolen*, 80 F.3d at 1283-84; *Dodrill*, 12 F.3d at 918. These findings are sufficiently specific to permit this court to conclude that the ALJ did not arbitrarily discredit her testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

## <u>CONCLUSION</u>

The Commissioner's final decision that Ms. Terrell is not disabled and is not entitled to SSI payments under Title XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.


Dated this  10th  day of October, 2006.


/s/ Michael W. Mosman

Michael W. Mosman

United States District Judge


PAGE 12 - OPINION AND ORDER